IN THE MATTER OF THE APPEAL OF: CHARLES D. OWENS AND JOHN F. PADGETT D/B/A FOREST CITY ASSOCIATES FROM THE DECISION OF THE RUTHERFORD COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING PROPERTY TAXATION FOR 1994

No. COA00-686

(Filed 19 June 2001)

1. Taxation— ad valorem—valuation method—income rather than cost method

The Property Tax Commission did not err in its review of a property valuation by finding no probative evidence of the cost approach or by accepting the income approach to valuing these

properties where there was substantial evidence in the record supporting the Commissions's decision and the taxpayers did not meet their burden of proving that the method of valuation used by the Commission was illegal or arbitrary and produced a value substantially higher than the true value.

**2. Taxation— ad valorem—valuation method—yield capitalization income approach**

The Property Tax Commission did not err by upholding a county's valuation of property based solely on a "yield capitalization income approach." There is no exclusive technique that must be used in an income approach as long as the decision to accept a valuation method is based on substantial evidence in the record. In this case, market data was properly used to establish the rate of return on investment using the yield capitalization method. Moreover, the taxpayers failed to provide two of the necessary elements for the analysis for which they contended.

**3. Constitutional Law— due process—property tax valuation—notice of valuation method**

There was no due process violation in a property tax valuation review where the taxpayers contended that the county used a valuation method not disclosed to them until the hearing, but the matter was heard on remand, both parties were aware of the valuation methods being advocated by the other, and both were allowed an opportunity to persuade the Property Tax Commission of the proper method.

Appeal by taxpayers from judgment entered 2 March 2000 by North Carolina Property Tax Commission sitting as the State Board of Equalization and Review. Heard in the Court of Appeals 20 April 2001.

*J. Thomas Davis for appellant-taxpayer.*

*Shelley T. Eason and Walter H. Dalton, for appellee-Rutherford County.*

BRYANT, Judge.

The preliminary procedural history and facts for this case are set forth in our previous decision, *In re Appeal of Owens*, 132 N.C. App. 281, 511 S.E.2d 319 (1999).

IN RE APPEAL OF OWENS

[144 N.C. App. 349 (2001)]

On remand, the Property Tax Commission (Commission) reviewed the transcript and evidence presented at its 1997 hearing. The Commission affirmed Rutherford County's (County) revaluation of taxpayers' property. Specifically, the Commission found that: no probative evidence was offered as to the cost and comparable sales approach; at the time of the general appraisal, there was a lack of comparable sales in the County and surrounding areas; the parties stipulated for the record that a market approach was not an appropriate method to determine the value of taxpayers' property subject to this appeal; even though the Commission considered all three approaches to value, the income approach is most reliable to determine the values of taxpayers' property; the yield capitalization approach is more appropriate in determining the value of the subject properties than the direct capitalization method because there were no comparable sales available in the County or the surrounding areas, and the direct capitalization approach could not be employed without comparable sales; the County's use of the yield capitalization approach was proper; and the County's appraisals of the subject nine parcels did not substantially exceed the true value in money of the subject properties as of 1 January 1994.

Further, the Commission determined that the taxpayers failed to produce competent, material and substantial evidence: 1) that the County used an arbitrary or illegal method to appraise the subject properties, and 2) that the County's values substantially exceeded the fair market values of the subject properties. Taxpayers appealed to this Court on 25 March 2000.

Taxpayers make four arguments on appeal, all challenging the Commission's findings regarding valuation of the property. This Court's review of a final decision of the Commission is governed by N.C.G.S. § 105-345.2, which states:

> (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

Pursuant to N.C.G.S. § 105-345.2(b), this Court will review the decision of the Commission analyzing the 'whole record' to determine whether the decision has a rational basis in evidence. *See In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979) ("The []whole record[] test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence."). The reviewing court is not afforded unlimited discretion to substitute its decision for that of the Commission. *Id.* Even if the evidence is susceptible to supporting alternate rational decisions, the decision of the Commission will not be disturbed if that decision is based on substantial evidence from the record. *See Mendenhall v. North Carolina Dep't of Human Resources*, 119 N.C. App. 644, 650, 459 S.E.2d 820, 824 (1995) ("This standard, the []whole record[] test, does not allow the reviewing court to replace the agency's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo.").

It is the responsibility of the Commission to determine the weight and credibility of the evidence presented. *In re Southern Railway*, 59 N.C. App. 119, 123, 296 S.E.2d 463, 467, *rev'd on other grounds*, 313 N.C. 177, 328 S.E.2d 235 (1985). It is presumed that *ad valorem* tax assessments are correct and that the tax assessors acted in good faith in reaching a valid decision. *In re McElwee*, 304 N.C. 68, 75, 283 S.E.2d 115, 120 (1981). To overcome those presumptions, the taxpayer carries the burden to show that an illegal or arbitrary method of valuation was used, *and* that the assessed value substantially exceeds the properties fair market value. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975) (emphasis added).

For property tax purposes, "[a]ll property, real and personal, shall as far as practicable be appraised or valued at its true value in

IN RE APPEAL OF OWENS

[144 N.C. App. 349 (2001)]

money." N.C.G.S. § 105-283. All real property located in a particular county must be appraised at its true value—the fair market value—at least every eight years in that county's general reappraisal. N.C.G.S. § 105-286. The true value is the price willing and financially able buyers would pay to purchase the property from a willing seller. N.C.G.S. § 105-283.

The relevant portions of N.C.G.S. § 105-317 provide, the elements to be considered in the appraisal of real property as:

(a) Whenever any real property is appraised it shall be the duty of the persons making appraisals:

(1) In determining the true value of land, to consider as to each tract, parcel, or lot separately listed at least its advantages and disadvantages as to location; zoning; quality of soil; waterpower; water privileges; dedication as a nature preserve; conservation or preservation agreements; mineral, quarry, or other valuable deposits; fertility; adaptability for agricultural, timber-producing, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value except growing crops of a seasonal or annual nature.

(2) In determining the true value of a building or other improvement, to consider at least its location; type of construction; age; replacement cost; cost; adaptability for residence, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value.

Our courts have recognized three approaches to valuing real property in accordance with the requirements of N.C.G.S. § 105-317(a)—the cost approach, the comparable sales approach, and the income approach. *See In re Appeal of Strough Brewery*, 116 N.C. App. 178, 186, 447 S.E.2d 803, 807 (1994); *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 16, 415 S.E.2d 111, 115 (1992).

I.

[1] The taxpayers assert that the Commission erred in finding no probative evidence of the cost approach method. They contend that the cost approach should be used to establish a limitation on the valuation of the property.

The evidence in the record reveals that the County presented evidence of value under the three valuation approaches recognized by our courts. The County introduced out-of-county sales for considera-

tion under the sales comparison approach. In addition, the County's expert, Charles Long, testified that the County's property cards "lend themselves to a cost approach methodology but are adjusted through the income approach and compared with the sales comparison approach". Ultimately, Long testified that in his expert opinion, the income approach was the most reliable indicator of value for taxpayers' properties.

On cross-examination, Long suggested that the value determined by the cost approach should support the value derived from the income approach. He added that the difference between the County's and the taxpayers' assessment of the cost for the improved property, may stem from the fact that the taxpayers did not include evidence of "soft costs" in their evidence.

There appears to be substantial evidence in the record supporting the Commission's decision to accept the income approach to valuing the properties. It is the duty of the Commission to weigh and determine the credibility of evidence submitted for its consideration. Therefore, this Court will presume the assessor's determination of value and method of valuation to be valid unless the decision is unsupported by substantial evidence. The taxpayers have not met the burden of proving that the method of valuation used by the Commission was illegal or arbitrary *and* that the method produced a substantially higher value than the true value. *See Amps*, 287 N.C. at 563, 215 S.E.2d at 762. Therefore, we find the Commission's decision to use the income approach to valuing taxpayers' property to be proper.

## II.

[2] Next, taxpayers argue that the Commission committed reversible error by upholding the County's valuation of the taxpayers' property based solely on a "yield capitalization income approach" to valuation to the exclusion of cost and other factors. We disagree.

In an earlier opinion, this Court stated that there is no exclusive technique that must be used in an income approach to value. *In re Appeal of Owens*, 132 N.C. App. at 287-90, 511 S.E.2d at 323. Rather, we accept the principle enumerated in the treatise, *The Appraisal of Real Property*, recognizing two basic types of income approach—direct capitalization and yield capitalization. 132 N.C. App. at 287-88, 511 S.E.2d at 323-24. As long as the Commission's decision to accept this method of income approach valuation is based

on substantial evidence from the record, that decision will not be disturbed on appeal.

Taxpayers assert that the County used a 12% equity yield (market rate) instead of the 21% return on investment that the taxpayers hoped to receive. Further, they contend that the County should have used the taxpayers' actual expenses, as indicated in Exhibits 5(a) and 5(c) to do a direct capitalization determination of value.

In income valuation for property tax purposes, values are derived from market data, and reflect the typical practices in an area. *In re Southern Railway*, 313 N.C. 177, 190, 328 S.E.2d 235, 244 (1985). If actual data, rather than market data, was used for valuation purposes, our courts could potentially "penalize the competent" and reward the incompetent by increasing or decreasing appraised values depending upon past management performance. *See In re Pine Raleigh Corp.*, 258 N.C. 398, 403, 128 S.E.2d 855, 859 (1963). In the instant case, market data was properly used to establish the rate of return on investment using the yield capitalization method.

In addition, the Commission properly disregarded taxpayers contention to use a direct capitalization method. It appears from the record that the taxpayers failed to provide either a suggested capitalization rate or a figure to be used for market expenses—which are two of the necessary elements for a direct capitalization analysis. *See* 132 N.C. App. at 285, 511 S.E.2d at 322 ("Under the income approach method, the value of property is determined by dividing the net income by an appropriate capitalization rate. . . . After accepting the Taxpayer's income as market income and adjusting the annual gross income of the properties for expenses and vacancy, the resulting net income was capitalized into an indication of market value for each of the subject properties."). Therefore this Court finds that the Commission's decision allowing the County's use of the yield capitalization method was correct.

### III.

Third, taxpayers contend that the Commission committed reversible error by allowing the County's application of a "yield capitalization income approach" to value the taxpayers' property. Taxpayers are essentially pursuing the same argument as presented for issue two. For the reasons enumerated in issue two, we uphold the Commission's decision to allow the County's application of the yield capitalization method income approach to value property.

IV.

[3] Lastly, taxpayers assert that the Commission committed reversible error by allowing the County to use a method of valuation that was not disclosed to the taxpayers until the hearing of this matter. Taxpayers contend that N.C.G.S. § 105-317(b) and Article I, Section 19 of the North Carolina Constitution require that the method of valuation used by the County must be disclosed in a meaningful time and manner to satisfy any inherent due process concerns. Although the case at bar has come before this Court on two separate occasions concerning the method of valuation used by the County, this is the first time taxpayers raise a due process issue. We do not believe this issue to be properly before this Court, but will provide a cursory review of the issue.

The Supreme Court of North Carolina has stated the fundamental premises of procedural due process are notice and the opportunity to be heard. *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998). "Moreover, the opportunity to be heard must be at a meaningful time and in a meaningful manner." *Id.*

The taxpayers contend that their property tax records suggested that the County was using a cost approach to valuing their properties. Thus, the taxpayers presented their case based on the conclusion that the County was utilizing the cost approach. Taxpayers assert that after they presented their case, the County advanced a method of valuation different from the cost approach. Thus, taxpayers argue their constitutional right to procedural due process was violated.

On remand from this Court's decision on 16 February 1999, taxpayers were given an opportunity to present evidence to the Commission advocating the cost method of valuation. The Commission also considered evidence from the County advancing the income method of valuation. On remand, both parties were aware of the valuation methods being advocated by the other party and both parties were allowed opportunity to persuade the Commission as to the proper method of valuation. Analyzing the facts in this case, this Court finds that the taxpayers were afforded sufficient procedural due process protections of an opportunity to be heard at a meaningful time and in a meaningful matter.

Affirmed.

Chief Judge EAGLES and Judge McCULLOUGH concur.