IN THE MATTER OF APPEAL OF: THE GREENS OF PINE GLEN LTD. PARTNERSHIP FROM THE DECISION OF THE DURHAM COUNTY BOARD OF EQUALIZATION AND REVIEW REGARDING THE VALUATION OF CERTAIN REAL PROPERTY FOR TAX YEAR 1997

No. COA00-1218

(Filed 20 November 2001)

**Taxation— ad valorem—property valuation—income approach**

The Property Tax Commission erred by affirming Durham County's ad valorem tax valuation of a taxpayer's property as though it were not encumbered by 26 U.S.C. § 42 restrictions for low-rent housing, because: (1) the property was constructed under section 42 for the express purpose of providing low-income, reduced-rent housing, and was operating as its proper and efficient use; (2) section 42 restrictions are not a personal encumbrance, but are part of a federal program which is administered by the state and which the United States Congress has determined to be in the public interest; (3) the federal rent restrictions applicable to the taxpayer are a part of the market for section 42 housing, and the property must be valued according to this market; and (4) the income approach must be given greatest weight for determining the value since it is the most reliable method for assessing investment property such as apartments.

Appeal by taxpayer from a final decision entered 19 June 2000 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 12 September 2001.

*Durham County Attorney S. C. Kitchen, by Assistant County Attorneys Kimberly M. Grantham and Curtis O. Massey, for appellee Durham County.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker and Jason J. Kaus, for appellant The Greens of Pine Glen, Limited Partnership.*

*James B. Blackburn, III, amicus curiae for the North Carolina Association of County Commissioners.*

*Moore & Van Allen, PLLC, by Susan Ellinger, Charles H. Mercer, Jr. and Marc C. Tucker, amicus curiae for the North Carolina Low Income Housing Coalition; William D. Rowe, amicus curiae for the North Carolina Justice and Community Development Center.*

HUNTER, Judge.

Taxpayer, The Greens of Pine Glen, Limited Partnership ("GPG"), appeals a final decision of the Property Tax Commission ("Commission") affirming appellee Durham County's ("the County") *ad valorem* tax valuation of GPG's property. We reverse the decision of the Commission and remand.

GPG is a 168-unit apartment complex constructed in Durham, North Carolina in 1996. The complex was built pursuant to a federal program which encourages the building of rent-restricted housing for low-income families. Pursuant to this program, set forth in the Internal Revenue Code at 26 U.S.C. § 42 ("section 42"), GPG's developer received ten years' worth of federal tax credits which assisted in financing the construction of the housing. In return, the developer agreed to restrict the pool of eligible tenants to low-income families for thirty years, and to limit rents to rates that are approximately twenty-five to thirty percent less than prevailing market rates for thirty years. The restrictions on the property are enforced by recorded restrictive covenants.

In April 1997, the County delivered to GPG a property tax appraisal which valued the property at $5,941,692.00. The County arrived at the value by using the income method of appraisal, which took into account the market impact of the section 42 use and rent restrictions on the property. On 9 May 1997, the County delivered to GPG a revised appraisal which increased the appraised value of the property to $7,488,350.00. The County arrived at the May 1997 appraisal using solely the replacement cost method of valuation, not the income method. The May 1997 appraisal did not take into account the section 42 restrictions on the property.

The County sent a third appraisal to GPG in 1998 when it determined that it had erred in calculating the square footage of the GPG apartments in its May 1997 appraisal. As a result, the County decreased the appraised value of the property to $7,250,050.00. Again, the County's third appraisal was based solely on the replacement cost of the GPG property and did not take into account the section 42 restrictions on the property.

GPG appealed the County's May 1997 assessment to the Durham County Board of Equalization and Review. The County Board refused to revise the assessment, and on 10 October 1997, GPG filed an appeal with the Commission. In a three to two decision, the

Commission affirmed the County's May 1997 assessment on 19 June 2000. Two commissioners dissented, concluding that the section 42 restrictions must be taken into account in appraising the property's tax value. GPG appeals.

GPG argues on appeal that the Commission erred in affirming the County's valuation of the property as though not encumbered by section 42 restrictions; that the Commission's decision essentially authorizes the County to improperly tax GPG's section 42 federal tax credits which are intangible property; and that the Commission erred in affirming the County's May 1997 valuation, which the County concedes was based upon an incorrect measurement of the property. For reasons stated herein, we reverse the Commission's decision and remand for a redetermination of the value of GPG's property which takes into account the section 42 restrictions on the property.

The standard of appellate review for property valuations is set forth in N.C. Gen. Stat. § 105-345.2(b) (1999). This statute provides that we "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action." N.C. Gen. Stat. § 105-345.2(b). This Court has the authority to reverse, remand, modify, or declare void any Commission decision which is:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

*Id.* We must "review the decision of the Commission analyzing the 'whole record' to determine whether the decision has a rational basis in evidence." *In re Appeal of Owens,* 144 N.C. App. 349, 351-52, 547 S.E.2d 827, 828 (2001).

"It is presumed that *ad valorem* tax assessments are correct and that the tax assessors acted in good faith in reaching a valid decision." *Id.* at 352, 547 S.E.2d at 829. However, the presumption is rebutted where a taxpayer can "show that an illegal or arbitrary

method of valuation was used, and that the assessed value substantially exceeds the properties [sic] fair market value." *Id.* (citing *In re Appeal of AMP, Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975)) (emphasis omitted).

According to this State's uniform assessment standards, "all property, real and personal, shall be assessed for taxation at its true value or use value as determined under [N.C. Gen. Stat. § 105-283 (1999)]." N.C. Gen. Stat. § 105-284(a) (1999). The term "true value" is defined in N.C. Gen. Stat. § 105-283 (1999) as "market value":

> [T]hat is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283. Significantly, N.C. Gen. Stat. § 105-317 (1999) requires that in determining the true value of property or a building, the appraiser *must* take into account its "uses; past income; probable future income; and any other factors that may affect its value." N.C. Gen. Stat. § 105-317(a)(1).

It is generally accepted that there are three methods of appraisal for determining market value: (1) comparable sales; (2) cost; and (3) income. *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 16, 415 S.E.2d 111, 115, *appeal dismissed and disc. review denied*, 331 N.C. 553, 418 S.E.2d 664 (1992). However, the courts of this State have routinely held that " 'the income approach is the most reliable method in reaching the market value of investment property.' " *In re Appeal of Owens*, 132 N.C. App. 281, 287, 511 S.E.2d 319, 323 (1999) (quoting *In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 474, 458 S.E.2d 921, 924, *affirmed*, 342 N.C. 890, 467 S.E.2d 242 (1996)). That approach is based upon the theory that something is worth what it will earn. *Id.*

On the other hand, "[t]he cost approach is better suited for valuing specialty property or newly developed property; when applied to other property, the cost approach receives more criticism than praise." *Belk-Broome*, 119 N.C. App. at 474, 458 S.E.2d at 924. The cost approach is most often used "when no other method will yield a realistic value. The modern appraisal practice is to use cost approach as a secondary approach 'because cost may not effectively reflect market conditions.' " *Id.* (citation omitted).

The County argues, and the Commission agreed, that the cost approach was the appropriate method of valuation for GPG and that the section 42 restrictions must not be considered. In support of this argument, the County relies upon *In re Pine Raleigh Corp.*, 258 N.C. 398, 128 S.E.2d 855 (1963), and *In re Appeal of Greensboro Office Partnership*, 72 N.C. App. 635, 325 S.E.2d 24, *disc. review denied*, 313 N.C. 601, 330 S.E.2d 610 (1985). In *Pine Raleigh*, the taxpayer appealed the county's appraisal, arguing that the appraisal did not take into account a lease which encumbered the subject property. *Pine Raleigh*, 258 N.C. at 399-400, 128 S.E.2d at 856. The lease, which was to last for a period of thirty years, fixed the rental income the taxpayer could receive. *Id.* at 399, 128 S.E.2d at 856. The court determined that in assessing the property's past income and probable future income under N.C. Gen. Stat. § 105-295 (now § 105-317), the assessor need not necessarily rely solely on actual income, but could also consider "income which could be obtained by the proper and efficient use of the property." *Id.* at 403, 128 S.E.2d at 859.

The court stated that "[t]o hold otherwise would be to penalize the competent and diligent and to reward the incompetent or indolent." *Id.* The court determined that net rental income is a factor that should be considered in determining value. *Id.* It is only where "the income actually received is less than the fair earning capacity of the property, [that] the earning capacity should be substituted as a factor rather than the actual earnings." *Id.* This Court in *Greensboro* simply relied on this holding of *Pine Raleigh* in affirming the Commission's determination that it would not consider the fact the subject property was encumbered by a lease for below-market rents. *Greensboro*, 72 N.C. App. at 640, 325 S.E.2d at 26-27.

These cases are distinguishable from the present case. GPG, which was constructed under section 42 for the express purpose of providing low-income, reduced-rent housing, is operating at its "proper and efficient use" as section 42 property. Such property is distinguishable from property where the owner personally elects to enter into a lease with another party, such lease being a unique encumbrance to that specific property. The court in *Pine Raleigh* specifically stated that one runs the risk of rewarding the "incompetent or indolent" for a bad business decision if one accounts for such personal encumbrances. As noted by the dissenting commissioners, section 42 restrictions are not a " 'personal encumbrance' " but "are part of a Federal program which is administered by the State of North

Carolina and which the United States Congress has determined to be in the public interest."

Rather, the instant case is more analagous to the situation presented to this Court in *Belk-Broome*, 119 N.C. App. 470, 458 S.E.2d 921, decided subsequent to *Pine Raleigh* and *Greensboro*. In that case, the taxpayer, a Belk department store, challenged a final decision of the Commission which upheld the county's *ad valorem* tax appraisal of the Belk property using the cost method of valuation. *Id.* at 471, 458 S.E.2d at 922. The county valued the property at $10.4 million, while Belk asserted the correct value was $6 million, and that the correct appraisal method was the income approach. *Id.*

Belk was one of three anchor department stores at Valley Hills Mall in Hickory, North Carolina. *Id.* Developers seeking to develop such a mall must secure the presence of anchor department stores such as Belk, which are necessary to draw customers, and thereby draw stores to rent space in the "in-line" portion of the mall. *Id.* at 475, 458 S.E.2d at 925. Therefore, developers are willing to make monetary concessions, such as lower rental rates or purchase prices, to anchor stores in order to attract them to the mall. *Id.* at 475-76, 458 S.E.2d at 925. The monetary concessions are set forth in an "operating agreement" between the anchor store and the mall's developer which defines each parties' rights and obligations. *Id.* at 476, 458 S.E.2d at 925. Significantly, most operating agreements restrict the anchor store from operating as anything other than a department store and from selling the property to anything other than an acceptable anchor department store. *Id.*

In upholding the county's assessment of the Belk property, the Commission in *Belk-Broome* relied solely on the cost approach. *Id.* We reversed the Commission, finding that such reliance was error. *Id.* In relying on the cost approach, the Commission in *Belk-Broome* used a similar analysis to the Commission in the case *sub judice*. There, the Commission viewed the operating agreement between Belk and the mall developer as an encumbrance on the property that distorted Belk's appraisal which had taken into account the restrictions placed on Belk. *Id.* The Commission used a " 'bundle of rights' " analogy to determine that the operating agreement between Belk and the mall took away some of Belk's rights from the bundle of fee simple ownership. *Id.* Thus, the Commission concluded that Belk's appraiser, which valued the property taking the restrictions into account, only valued a partial interest in the property. *Id.*

IN RE APPEAL OF GREENS OF PINE GLEN LTD. PART.

[147 N.C. App. 221 (2001)]

The Commission in that case concluded that the county correctly appraised the property based upon the " 'entire bundle of rights' " regardless of whether Belk had chosen to bargain some of those rights away in an operating agreement. *Id.* at 477, 458 S.E.2d at 925. It stated that " 'all appraisals of property for property tax purposes must determine the value of the entire bundle of rights. This is true whether or not the owner has bargained away some of his rights.' " *Id.* The Commission noted that just as the property owner in *Greensboro* had bargained away some rights, Belk was also operating short of a full bundle of rights, but must nevertheless be appraised based upon " 'the entire bundle of rights.' " *Id.*

This Court rejected the Commission's analysis. We further stated that the Commission's reliance on *Greensboro* was a "misinterpretation of the law." *Id.* at 477, 458 S.E.2d at 926. We noted that *Greensboro* "stands for the proposition that the value of property must be based on the market, not good or bad business transactions." *Id.* at 477-78, 458 S.E.2d at 926. We stated that in *Greensboro*, the lease "was a personal encumbrance unique to that property, whereas the operating agreement [in *Belk-Broome*] is a market standard." *Id.* at 478, 458 S.E.2d at 926. While we noted that "[p]lacing a lower value on this property solely because it is an anchor store may appear illogical, . . . this unequal treatment is a part of the market that must be considered." *Id.*

As in *Belk-Broome*, the Commission in the case *sub judice* used a "bundle of rights" analysis in holding that the section 42 restrictions on GPG should not be considered because it "would result in a value of only a partial interest in the subject property[] . . . represent[ing] only a part of the bundle of rights in the subject property." It further concluded that in this State, "a property tax appraisal applies to the whole bundle of rights, or the fee simple interest in the property." The Commission relied heavily on the testimony of the County's appraiser, Mr. Johnson, who opined that the tax value of the property must reflect "the full fee simple interest in the subject property" which consists of "the value of the property as if unencumbered by any contract or restriction." The Commission concluded that taking into account the rent restrictions placed on section 42 property would "not reflect the value of the full fee simple interest in the subject property."

This conclusion is not consistent with our decision in *Belk-Broome*. Regardless of the fact the Commission in that case concluded the anchor stores were not being valued based upon their

entire bundle of rights, we held that the operating agreement was an "integral part" of the market for a store such as Belk, and that the property *"must be valued according to that market." Id.* at 478, 458 S.E.2d at 926 (emphasis added).

Likewise, the federal rent restrictions applicable to GPG are a part of the market for section 42 housing such as GPG, and the property must be valued according to this market. As noted in *Belk-Broome*, while it may appear illogical to place a lower value on GPG solely because of the section 42 requirements, such unequal treatment is undoubtedly a part of the market that must be considered. As we stated in *Belk-Broome*, "[t]he County and Commission must take the property as it finds it. It is not the Commission's place to equalize property values." *Id.* at 480, 458 S.E.2d at 927.

Moreover, unlike the situation in *Greensboro*, section 42 low-rent housing is not a "personal encumbrance unique to" GPG. Indeed, the Commission's decision acknowledges the presence of other section 42 complexes located in Durham County. The restrictions applicable to GPG and other section 42 properties in Durham County are more akin to the uniform restrictions placed on anchor department stores in *Belk-Broome* than the lone unfavorable lease at issue in *Greensboro*. Low-rent housing built according to the established requirements and mandates of section 42 are no less of a market standard than anchor department stores operating pursuant to operating agreements with mall developers.

We concluded in *Belk-Broome* that "[a]n important factor in determining the property's market value [as defined in N.C. Gen. Stat. § 105-283] is its highest and best use." *Id.* at 473, 458 S.E.2d at 923. This Court stated:

> The Belk property must be valued at its highest and best use, which . . . is its present use as an anchor department store. Therefore, the County, and the Commission, are required to use a valuation methodology that reflects what willing buyers in the market for anchor department stores will pay for the subject property.

*Id.* at 474, 458 S.E.2d at 923-24. We further noted that in order to assess market value, "the County must 'consider *at least* [the property's] . . . past income; probable future income; and any other factors that may affect its value.' " *Id.* at 474, 458 S.E.2d at 924 (quoting N.C. Gen. Stat. § 105-317(a)(2) (1999)) (emphasis added).

IN RE APPEAL OF GREENS OF PINE GLEN LTD. PART.

[147 N.C. App. 221 (2001)]

We likewise hold that in assessing the value of GPG, the County and the Commission are required to use a valuation methodology that reflects what willing buyers in the market for rent-restricted, low-incoming housing complexes would pay for the subject property. The language of N.C. Gen. Stat. § 105-284(a) is clear that a property's true value is its "market value," or the price at which the property would change hands on the market. N.C. Gen. Stat. § 105-317 is equally clear in stating that a determination of market value requires consideration be given to the uses of the property, the income generated by the property, the probable future income of the property, and any other factors that affect the market value of the property. The fact that GPG apartments are restricted to limiting rents to twenty-five to thirty percent below prevailing market rates for thirty years unquestionably affects the market value of the property, as well as the use of the property and the current and future probable income of the property.

It is clear from the Commission's decision that the County and the Commission failed to consider factors that N.C. Gen. Stat. § 105-317 requires be considered. The Commission instead relied upon the same "bundle of rights" theory rejected in *Belk-Broome* that the property's true value is equal to its full fee simple interest as if unencumbered. The failure to consider these factors was error, resulting in our conclusion that the County's assessment and the Commission's decision were based on an illegal method of valuation, thereby rebutting the presumption that the County's assessment was correct. *See In re Southern Railway*, 313 N.C. 177, 181, 328 S.E.2d 235, 239 (1985) ("[a]n illegal appraisal method is one which will not result in 'true value' as that term is used in [N.C. Gen. Stat. § 105-283]").

To the extent the Commission determined the income method should not be used because it would not reflect the value of the full fee simple interest in the property, its decision is contrary to *Belk-Broome*. We concluded in *Belk-Broome* that the income approach should be the primary method for determining the value of the anchor stores. *Belk-Broome*, 119 N.C. App. at 474, 458 S.E.2d at 924. We noted, however, "that while the income approach is preferential, a combination of approaches may be used because of the inherent weaknesses in each approach. We do not foreclose using such a combination of approaches here so long as the income approach is given greatest weight." *Id.* We likewise hold that on remand, the County must determine the value of GPG using the income method or a com-

bination of methods which account for the market effect of the section 42 restrictions. As noted by the dissenting Commissioners, both of the County's experts testified that the income method is the most reliable method for assessing investment property such as apartments.

We further hold that the County's May 1997 appraisal substantially overvalued GPG's fair market value, given that it failed to account for the market effect of the section 42 restrictions. The County's April 1997 appraisal of GPG's property performed under the income approach and which accounted for the section 42 restrictions valued GPG's property at $5,941,692.00. The May 1997 assessment valued the property at $7,488,350.00, an increase in value of over $1.5 million.

We need not address GPG's additional arguments, including that the Commission erred in affirming the May 1997 appraisal because the County conceded it was based upon a miscalculation of approximately five percent of GPG's square footage. However, even assuming *arguendo* the miscalculation did not result in a substantial increase in the valuation (the difference between the May 1997 and the 1998 valuations amounted to $238,300.00), the Commission should not affirm an appraisal when aware that it is based upon erroneous calculations.

The decision of the Commission is reversed and this matter is remanded to the Commission. The Commission may either hold a new hearing at which it must redetermine the value of the GPG property, or further remand to the County for a redetermination of value. In either event, the Commission or the County must use a method or combination of methods which take into account the market standard for property restricted by the requirements of section 42.

Reversed and remanded.

Judges WYNN and TYSON concur.