IN THE MATTER OF APPEAL OF: THE GREENS OF PINE GLEN LTD. PARTNERSHIP FROM THE DECISION OF THE DURHAM COUNTY BOARD OF EQUALIZATION AND REVIEW REGARDING THE VALUATION OF CERTAIN REAL PROPERTY FOR TAX YEAR 1997

No. 681PA01

(Filed 28 February 2003)

**1. Taxation— ad valorem—valuation—low-income housing— section 42 developments**

The whole record test revealed that the Court of Appeals erred in an action to review the ad valorem tax valuation of a taxpayer's 26 U.S.C. § 42 low-income housing property by requiring

**IN RE APPEAL OF THE GREENS OF PINE GLEN LTD. P'SHIP**

[356 N.C. 642 (2003)]

the income method of valuation or a combination of methods which account for the market effect of section 42 rent restrictions, because the taxpayer failed to show by competent, material, and substantial evidence that the assessed value of the pertinent property using the cost approach method exceeded its fair market value when: (1) taxpayers cannot adjust the value of their property by engaging in contractual agreements that reduce the income potential of their property below the fair market value; (2) unlike a governmental restriction such as zoning, section 42 restrictions do not diminish the property's value but instead balance tax credits allowed to the developer against rent restrictions imposed on the developer; (3) section 42 restrictions are freely entered contractual covenants and not governmental regulations; and (4) developers who choose to participate in the section 42 program voluntarily trade away revenue potential in order to finance the property's construction.

## 2. Taxation— ad valorem—square footage value

A case reviewing the ad valorem tax valuation of a taxpayer's 26 U.S.C. § 42 low-income housing property is remanded to the Court of Appeals for further remand to the North Carolina Property Tax Commission for the limited purpose of substituting in its final decision the correct square footage value for the pertinent property, and this action does not violate N.C.G.S. § 105-345.1 because the correct valuation was known before the hearing but was not considered at the hearing.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 147 N.C. App. 221, 555 S.E.2d 612 (2001), reversing the final decision of the North Carolina Property Tax Commission entered 19 June 2000. Heard in the Supreme Court 9 September 2002.

*S.C. Kitchen, Durham County Attorney, by Curtis Massey, Assistant County Attorney, for appellant Durham County.*

*Parker, Poe, Adams & Bernstein L.L.P., by Charles C. Meeker and William H. McCullough, for taxpayer-appellee The Greens of Pine Glen.*

*North Carolina Association of County Commissioners, by James B. Blackburn, III, General Counsel, amicus curiae.*

**IN RE APPEAL OF THE GREENS OF PINE GLEN LTD. P'SHIP**

[356 N.C. 642 (2003)]

*Moore & Van Allen PLLC, by Susan Ellinger, Charles H. Mercer, Jr., and Marc C. Tucker, on behalf of the North Carolina Low Income Housing Coalition, amicus curiae.*

EDMUNDS, Justice.

Respondent The Greens of Pine Glen, Limited Partnership (taxpayer), instituted this action against petitioner Durham County to review petitioner's ad valorem tax valuation of taxpayer's property, The Greens of Pine Glen, which is located in Durham, North Carolina. The North Carolina Property Tax Commission, sitting as the State Board of Equalization and Review, confirmed the valuation assigned by Durham County, but the Court of Appeals reversed and remanded the matter to the Commission for further proceedings. We hold that the Commission properly confirmed Durham County's appraisal of The Greens of Pine Glen. Accordingly, we reverse the Court of Appeals. In addition, we remand to the Court of Appeals for further remand to the North Carolina Property Tax Commission for the limited purpose of substituting in its final decision the correct square footage value for The Greens of Pine Glen.

The Greens of Pine Glen is a 168-unit apartment complex constructed in southwest Durham in 1996 pursuant to 26 U.S.C. § 42. This statute, which is part of the Internal Revenue Code and is commonly referred to as "section 42," provides substantial federal income tax credits as an incentive for developers to construct and operate housing for low-income families and individuals. 26 U.S.C. § 42 (2000). A potential tenant is eligible to rent a section 42 unit only if that tenant's income does not exceed sixty percent of the area's median income. *Id.* In exchange for the tax credits, developers agree to limit rents for a section 42 unit to no more than thirty percent of the sixty percent median income level. *Id.* In addition to the federal tax credit, North Carolina also provides state income tax credits to reward participation in the section 42 program (the program). N.C.G.S. § 105-129.16B (2001). Thus, section 42 tax credits fill the gap between the cost of developing the property and the reduced rents received from tenants, making section 42 construction projects attractive to developers.

Public agencies within each state administer the program and allocate the available federal and state tax credits. The North Carolina Housing Finance Agency, which is the responsible agency in this state, awards tax credits on the basis of several criteria, including the number of units built with rent restrictions and the overall

cost of construction. Taxpayer presented evidence that, in practice, section 42 developments are sufficiently desirable that interested developers compete for them. In fact, taxpayer's witness testified before the Commission that the number of applicants typically equals five times the available resources. Moreover, the high demand for such housing often results in a low vacancy rate. As a result, developers desiring the credits frequently agree to terms that exceed the minimum requirements of the program. In the case at bar, in order to maximize the credits available to it, taxpayer chose to construct one hundred percent of The Greens of Pine Glen as a section 42 program. In addition, taxpayer offered to extend the period of the restrictions beyond the mandatory fifteen years up to a total of thirty years. The rents taxpayer charges for its apartments are twenty-five to thirty percent below market rents for apartments of similar size, construction, and location, but are the maximum allowed for continued participation in the program.

Taxpayer's witness testified that developers of section 42 properties who receive an allocation from the North Carolina Housing Finance Agency almost always form a limited partnership with one or more limited or investor partners. The developer/general partner allocates the tax credits to the limited partners, which are typically Fortune 500 companies. Taxpayer's witness explained that the limited partners' interests lie solely in the tax credits for subsequent resale. In other words, the limited partners purchase a financial product.

The Greens of Pine Glen was developed through the creation of such a limited partnership. W.O. Brisben Companies, a for-profit company in the affordable housing field, became a one percent general partner with a ninety-nine percent limited partner, SunAmerica Housing Fund 213, a subsidiary of AIG Insurance. The partnership agreement allocated the tax credits allowed under section 42 to each partner commensurate with its ownership interest. The federal income tax credits allocated to the project were $822,006 per year for ten years, and the limited partner paid approximately $4,700,000 for its share of these credits. These funds were used to develop The Greens of Pine Glen, whose construction cost $10,800,000.

After construction was completed, Durham County in April 1997 sent taxpayer a tax appraisal that valued the property at $5,941,692. Durham County arrived at this value by using the income approach method of appraisal, which took into account the market impact of section 42 use and rent restrictions on the property. However, at that

time, Durham County used the cost approach method of appraisal to value restricted-rent properties and newly developed properties that did not have a rental history. The cost approach method of appraisal considers market rents and does not take into account rent restrictions. Consequently, owners of other restricted-rent properties suggested to Durham County tax officials that an error had been made when the income method was used to value The Greens of Pine Glen.

On 9 May 1997, Durham County delivered to taxpayer a revised appraisal of $7,488,350, based on the cost approach. Durham County later discovered that it had erred in calculating the property's square footage in its May 1997 appraisal and accordingly sent a corrected third appraisal to taxpayer in 1998, decreasing the appraised value to $7,250,050 for tax year 1998.

Taxpayer appealed Durham County's May 1997 appraisal to the Durham County Board of Equalization and Review, which affirmed the $7,488,350 value. Taxpayer then appealed to the Commission, which conducted a hearing on 13 and 14 April 2000. On 19 June 2000, in a split decision, the Commission confirmed Durham County's May 1997 appraisal.

Taxpayer appealed the Commission's decision to the North Carolina Court of Appeals. On 20 November 2001, the Court of Appeals issued a unanimous opinion reversing the Commission. After determining that Durham County overvalued The Greens of Pine Glen by using market rents to determine its value under the cost approach, *In re Appeal of Greens of Pine Glen Ltd. Part.*, 147 N.C. App. 221, 555 S.E.2d 612 (2001), the Court of Appeals held that The Greens of Pine Glen must be valued "using the income method or a combination of methods which account for the market effect of the section 42 [rent] restrictions," *id.* at 229-30, 555 S.E.2d at 618. Accordingly, the Court of Appeals remanded the matter for receipt of additional evidence on the property's value. *Id.* at 230, 555 S.E.2d at 618. On 6 March 2002, this Court allowed Durham County's petition for discretionary review.

[1] Petitioner Durham County contends that the Court of Appeals erred when it reversed and remanded the Commission's decision. Durham County argues that the Commission properly concluded that taxpayer failed to meet its burden to rebut the presumption that the county's appraisal was correct. We review decisions of the Commission pursuant to N.C.G.S. § 105-345.2. N.C.G.S. § 105-345.2

(2001). Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test. N.C.G.S. § 105-345.2(b). Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002). Under the whole-record test, however, the reviewing court merely determines " 'whether an administrative decision has a rational basis in the evidence.' " *In re Appeal of McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 127 (1981) (quoting *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979)). Because the controlling issue in this case is whether the Commission properly accepted Durham County's method of valuing The Greens of Pine Glen rather than the method offered by taxpayer, we use the whole-record test to evaluate the conflicting evidence.

Ad valorem tax assessments are presumed to be correct. *Id.* at 75, 283 S.E.2d at 120. However, a taxpayer may rebut this presumption if it produces "competent, material and substantial" evidence establishing that: "(1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property." *In re Appeal of AMP, Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975). Thus, a taxpayer who is challenging an ad valorem tax assessment must satisfy a two-prong test by demonstrating that the means adopted by the tax supervisor was illegal or arbitrary and also that the valuation was unreasonably high. *Id.* If a taxpayer fails to present evidence sufficient to meet its burden as to either prong, the appeal fails. *Id.*

The Commission concluded Durham County adequately established that it appraised The Greens of Pine Glen in accordance with its duly adopted schedules of values, standards, and rules, and in a manner consistent with the county's appraisal of comparable properties. In addition, the Commission found that taxpayer failed to show by competent, material, and substantial evidence that the assessed value of The Greens of Pine Glen exceeded its fair market value. After reviewing the whole record and considering taxpayer's contentions, we agree with the Commission. Therefore, we reverse the Court of Appeals.

Durham County argues that taxpayer failed to satisfy its burden of establishing that the method of appraisal used was illegal or

arbitrary.[1] The North Carolina General Assembly requires that all property, real and personal, be assessed for taxation at its true value or use value as determined under section 105-283. N.C.G.S. § 105-284(a) (2001). The words "true value" are interpreted as meaning market value, "that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller." N.C.G.S. § 105-283 (2001). In determining the "true value" of real property, an appraiser must consider, among other things, its "replacement cost; cost; adaptability for residence, commercial, industrial, or other uses; past income; probable future income; and any other factors that may affect its value." N.C.G.S. § 105-317(a)(2) (2001). However, the general statutes nowhere mandate that any particular method of valuation be used at all times and in all places. In light of the innumerable possible situations that may arise, authorities that have the obligation of assigning a value to land sensibly are given discretion to apply the method that most accurately captures the "true value" of the property in question.

Section 105-317 has been interpreted as authorizing three methods of valuing real property: the cost approach, the comparable sales approach, and the income approach. *In re Appeal of Owens*, 144 N.C. App. 349, 353, 547 S.E.2d 827, 829, *appeal dismissed and disc. rev. denied*, 354 N.C. 361, 556 S.E.2d 575 (2001); *In re Appeal of Stroh Brewery Co.*, 116 N.C. App. 178, 186, 447 S.E.2d 803, 807 (1994) (citing Patrick K. Hetrick, Larry A. Outlaw & James A. Webster, Jr., *North Carolina Real Estate for Brokers and Salesmen*, ch. 16, at 604 (3d ed. 1986)); *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 16, 415 S.E.2d 111, 115, *appeal dismissed and disc. rev. denied*, 331 N.C. 553, 418 S.E.2d 664 (1992). Although the income approach is generally considered the most reliable method for determining the market value of investment property, the cost approach is better suited for valuing specialty property or newly developed property and is often used when no other method will yield a realistic result. *In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 474, 458 S.E.2d 921, 924 (1995), *aff'd per curiam*, 342 N.C. 890, 467 S.E.2d 242 (1996). The

---

1. Although the parties correctly note that the taxpayer may rebut the presumption of correctness of an assessment by showing that the method of valuation is either illegal or arbitrary, the Court of Appeals' opinion and taxpayer's brief to this Court focus almost entirely on the purported illegality of the method used here. In light of unrebutted evidence that Durham County used the cost approach to value other similar property, we believe that there is no suggestion that the method employed in the case at bar was arbitrary.

**IN RE APPEAL OF THE GREENS OF PINE GLEN LTD. P'SHIP**

[356 N.C. 642 (2003)]

statute contemplates that the assessors and the Commission will consider which factors apply to each specific piece of property in appraising its true value. *See In re Ad Valorem Valuation of Prop. at 411-417 W. Fourth St.*, 282 N.C. 71, 81, 191 S.E.2d 692, 698 (1972).

Although both the income and the cost approaches are legal methods of valuation, the Court of Appeals held that the use of the cost approach was illegal under the circumstances of this case because that method does not consider income restrictions required by taxpayer's participation in the section 42 program. *In re Appeal of Greens of Pine Glen Ltd. Part.*, 147 N.C. App. at 229-30, 555 S.E.2d at 617-18. Accordingly, the Court of Appeals mandated that an appraiser of section 42 property must use the income approach or a combination of methods, including the income approach, that account for section 42 rent restrictions. *Id.* We begin by addressing this requirement.

This Court has consistently held that where the income approach is used, the valuation must be based on market rents, not contractually restricted rents. *In re Appeals of Southern Ry. Co.*, 313 N.C. 177, 190, 328 S.E.2d 235, 244 (1985); *In re Ad Valorem Valuation of Prop. at 411-417 W. Fourth St.*, 282 N.C. at 79-80, 191 S.E.2d at 698; *In re Ad Valorem Valuation of Prop. of Pine Raleigh Corp.*, 258 N.C. 398, 403, 128 S.E.2d 855, 859 (1963). In *Property of Pine Raleigh*, this Court considered the effect on tax valuation of a long-term lease that fixed the rental income the taxpayer could receive. The taxpayer argued that he had improvidently entered a lease under which the tenant payed a low rent, and as a result, the taxpayer was not receiving full value for his property. *In re Ad Valorem Valuation of Prop. of Pine Raleigh Corp.*, 258 N.C. at 400-01, 128 S.E.2d at 856-57. We held that when valuing real property in accordance with N.C.G.S. § 105-295 (now N.C.G.S. § 105-317), "the income referred to is not necessarily actual income. The language is sufficient to include the income which could be obtained by the proper and efficient use of the property." *Id.* at 403, 128 S.E.2d at 859. Accordingly, we held that taxpayers cannot adjust the value of their property by engaging in contractual agreements that reduce the income potential of their property below the fair market value. *Id.* at 404-05, 128 S.E.2d at 859-60.

We acknowledge that where two properties are taxed the same, the owner of the property that yields less income bears a proportionately higher tax burden than the owner of the property that produces a greater income. However, any such inequality is attributable to the

differences in the nature, use, and other characteristics of the properties, not to the taxing statute. *Id.* at 404, 128 S.E.2d at 860; *see also In re Ad Valorem Valuation of Prop. at 411-417 W. Fourth St.*, 282 N.C. at 78-80, 191 S.E.2d at 697-98 (holding that where contract rents produced a higher-than-market value, the appraiser could properly consider both the actual rental income and the market rental income). Therefore, this Court has held that "[i]f it appears that the income actually received is less than the fair earning capacity of the property, the earning capacity should be substituted as a factor rather than the actual earnings. The fact-finding board can properly consider both." *In re Ad Valorem Valuation of Prop. of Pine Raleigh Corp.*, 258 N.C. at 403, 128 S.E.2d at 859.

Like the long-term lease in *Property of Pine Raleigh*, which locked the property owner into a less-than-optimal rent, taxpayer's contractual agreement to section 42 rent restrictions meant The Greens of Pine Glen no longer earned the market rate in rents. Taxpayer voluntarily entered into such an agreement because of the substantial tax credits it received in return. Taxpayer could have built these apartments for rental on the open market, but it chose to be in the business of affordable housing in order to take advantage of the various federal and state incentives. Its participation in the section 42 program created another way to finance taxpayer's building project because the sale of the tax credits generated funds that taxpayer used to construct The Greens of Pine Glen. Therefore, taxpayer's participation in section 42 housing represented a business and economic decision, not unlike the long-term lease in *Property of Pine Raleigh*.

Moreover, even if Durham County valued The Greens of Pine Glen under the income approach as mandated by the Court of Appeals' holding, the "income" considered would not necessarily be actual income. Under *Property of Pine Raleigh*, if taxpayer received less than the fair earning capacity of The Greens of Pine Glen in rents, the fair earning capacity could control over or be considered along with the actual earnings. Therefore, even under the income approach of appraisal, Durham County and the Commission were not required as a matter of law to consider section 42 restrictions. Accordingly, taxpayer's contention that Durham County's method of appraisal was not legal because it did not consider the section 42 restrictions is insufficient to rebut the presumption that the appraisal was properly administered.

Taxpayer's arguments to the contrary are not persuasive. The Court of Appeals agreed with taxpayer's contention that section 42

restrictions are more analogous to governmental regulation than to freely entered contractual covenants. Taxpayer argued that the rent restrictions at bar resembled zoning provisions, which are routinely considered in appraising real property. However, this Court rejected such an equivalency when we held that "[a] zoning ordinance is not a contract between the municipality and its citizens . . . . It is subject to amendment or repeal at the will of the governing agency which created it." *McKinney v. City of High Point*, 239 N.C. 232, 237, 79 S.E.2d 730, 734 (1954). By contrast, when a state or governmental body becomes a party to a business contract, its rights and responsibilities are, with few exceptions, the same as those of individuals. *Smith v. State*, 289 N.C. 303, 310, 222 S.E.2d 412, 417 (1976). Therefore, governmental restrictions imposed as part of a state's police power are distinguishable from contractual agreements freely entered into between parties participating in arm's-length negotiations.

As detailed above, ample evidence was presented to establish that section 42 restrictions fall into the latter category. Unlike a governmental restriction such as zoning, section 42 restrictions do not diminish the property's value, but instead balance tax credits allowed to the developer against rent restrictions imposed on the developer. Because section 42 restrictions are freely entered contractual covenants, not governmental regulations, the Commission did not err in concluding that taxpayer may not artificially alter the value of its property below fair market value.

Although the Court of Appeals relied on *In re Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 458 S.E.2d 921, for the proposition that the section 42 program represents a new and distinct market requiring the consideration of its contractual restrictions, *In re Appeal of Greens of Pine Glen Ltd. Part.*, 147 N.C. App. at 226-29, 555 S.E.2d at 616-18, we believe that *Belk-Broome* is distinguishable. In *Belk-Broome*, the taxpayer, a Belk department store that served as an anchor store for a mall, successfully challenged a final decision of the Commission that upheld the county's ad valorem tax appraisal of the Belk property using the cost approach method of valuation. The Commission concluded that the county correctly appraised the property based upon the "entire bundle of rights" without regard as to whether Belk had chosen to bargain some of those rights away. *In re Appeal of Belk-Broome Co.*, 119 N.C. App. at 476-77, 458 S.E.2d at 925. The Court of Appeals reversed and held that Belk "unquestionably carried its burden" of showing that the county's valuation was

improper and that the income approach should be the primary method for determining the value of anchor stores. *Id.* at 475, 480, 458 S.E.2d at 924, 927.

Under the Commission's interpretation, Belk, as an anchor store, both enhanced the square-foot value of other stores, and then was itself taxed at the enhanced rate. *Id.* at 479, 458 S.E.2d at 926. The Court of Appeals recognized that this enhanced tax was improper. Unlike stand-alone facilities, anchor stores hold a unique position in mall retail operations. *Id.* at 475-76, 458 S.E.2d at 925. Anchor stores both attract smaller stores to the mall and allow mall managers to charge increased rents to those smaller stores. Because the success of a shopping mall is dependent on the presence of anchor stores and because the developer can charge the smaller stores increased rents, the anchors are afforded discounted rents. Under these facts, the Court of Appeals held that it was improper for the Commission to use the cost approach method of valuation to equalize property values between the anchor store and the other surrounding stores in the mall. *Id.* at 476, 480, 458 S.E.2d at 925, 927.

Significant factual differences distinguish the case at bar from *Belk-Broome.* Unlike a mall anchor store, The Greens of Pine Glen does not attract or retain other taxable property, nor does its presence confer any greater value on associated or adjacent properties. Section 42 rent restrictions do not apply to all apartment complexes, and section 42 restrictive covenants are not standard in the apartment industry. Those developers who choose to participate in the section 42 program voluntarily trade away revenue potential in order to finance the property's construction. Accordingly, we conclude that the analysis in *Belk-Broome* is inapplicable here.

Because taxpayer failed to meet the first prong of the test by establishing that the Commission used a valuation method that was illegal or arbitrary, we need not address the second prong, whether the appraisal exceeded the "true value in money" of the property. In addition, because we reverse the opinion of the Court of Appeals on the basis of the application of the facts to the statute, we need not reach Durham County's contention that the Court of Appeals' opinion represented an unconstitutional infringement by the judiciary on the powers of the General Assembly. *State v. Creason*, 313 N.C. 122, 127, 326 S.E.2d 24, 27 (1985).

[2] Our review of the record reveals that although the property was reappraised in 1998 to correct an error in the May 1997 appraisal

caused by a miscalculation of the square footage of the property, the Commission considered only the uncorrected value in its 2000 Order. Durham County argues that this Court does not have authority to remand this case to the Commission for reconsideration based on the correct square footage. *See* N.C.G.S. § 105-345.1. However, our reading of that statute satisfies us that it addresses only evidence that becomes known after the hearing before the Commission. Here, the evidence (in the form of the corrected valuation) was known before the hearing but was not considered at the hearing. Thus, the Commission considered the incorrect square footage value in its decision.

Based upon the foregoing, we reverse the decision of the Court of Appeals. We also remand this matter to the Court of Appeals for further remand to the North Carolina Property Tax Commission for the limited purpose of substituting in its final decision the correct square footage value for The Greens of Pine Glen. *See* N.C.G.S. § 105-345.2(b).

REVERSED AND REMANDED.

Justice BRADY did not participate in the consideration or decision of this case.