CALABRIA, Judge.
Where ample evidence, including eyewitness testimony and defendant's own admission to law enforcement, supported a finding of defendant's guilt, defendant's motion for post-conviction DNA testing did not allege a "reasonable probability that the verdict would have been more favorable to the defendant [.]" We affirm the order of the trial court denying defendant's motion.
I. Factual and Procedural Background
On 14 February 2005, a grand jury indicted Gregory Todd Pegram ("defendant") for the murder of Melissa Tittle. Defendant was also indicted for first-degree burglary. Defendant ultimately pleaded guilty to first-degree murder, first-degree burglary, habitual misdemeanor assault, and communicating threats. On 19 May 2005, Judge William Z. Wood, presiding over Stokes County Superior Court, entered judgment upon defendant's guilty plea, consolidated the offenses for judgment, and sentenced defendant to life imprisonment without parole.
On 18 February 2016, defendant filed a hand-written motion to locate and preserve evidence,[1] and motion for post-conviction DNA testing. This motion also sought appointment of counsel for any related proceedings. On 6 February 2017, the trial court entered an order on defendant's motions. The trial court specifically concluded that "the defendant failed to show that all the required conditions [for relief] were met, most notably that Defendant failed to show that the evidence sought was or is material to his defense." The trial court therefore denied defendant's motions.
Defendant appeals.
II. Standard of Review
A defendant has a right to appeal an order denying a motion for post-conviction DNA testing. N.C. Gen. Stat. § 15A-270.1 (2015).
Our standard of review of a denial of a motion for postconviction DNA testing is analogous to the standard of review for a motion for appropriate relief. Findings of fact are binding on this Court if they are supported by competent evidence and may not be disturbed absent an abuse of discretion. The lower court's conclusions of law are reviewed de novo.
State v. Gardner, 227 N.C. App. 364, 365-66, 742 S.E.2d 352, 354 (citation omitted), disc. review denied, 367 N.C. 252, 749 S.E.2d 860 (2013). " 'Under a de novo review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting In re Greens of Pine Glen Ltd. P'ship, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) ).
III. Analysis
In his sole argument on appeal, defendant contends that the trial court erred in denying defendant's post-conviction motion for DNA testing. We disagree.
The DNA Database and Databank Act of 1993, N.C. Gen. Stat. § 15A-266 (2015)et seq., provides the statutory basis for seeking post-conviction DNA testing. Specifically, the statute provides that:
(a) A defendant may make a motion before the trial court that entered the judgment of conviction against the defendant for performance of DNA testing and, if testing complies with FBI requirements and the data meets NDIS criteria, profiles obtained from the testing shall be searched and/or uploaded to CODIS if the biological evidence meets all of the following conditions:
(1) Is material to the defendant's defense.
(2) Is related to the investigation or prosecution that resulted in the judgment.
(3) Meets either of the following conditions:
a. It was not DNA tested previously.
b. It was tested previously, but the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.
(b) The court shall grant the motion for DNA testing and, if testing complies with FBI requirements, the run of any profiles obtained from the testing, upon its determination that:
(1) The conditions set forth in subdivisions (1), (2), and (3) of subsection (a) of this section have been met;
(2) If the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and
(3) The defendant has signed a sworn affidavit of innocence.
N.C. Gen. Stat. § 15A-269 (2015). The State does not dispute that some of the evidence sought to be tested by defendant, such as his clothing and knife, was related to the investigation and prosecution. Further, the State concedes that defendant filed a memorandum of innocence in tandem with his motion for DNA testing, and acknowledges defendant's assertion that the evidence had not previously been tested.
Even assuming arguendo that all of these facts are true, the question remains whether "there exists a reasonable probability that the verdict would have been more favorable to the defendant" had the evidence been tested. N.C. Gen. Stat. § 15A-269(b)(2).
In its brief on appeal, the State points to "the volume of additional evidence the State could use against" defendant, arguing that no more favorable verdict would have been available. Although a trial was not held, due to defendant's guilty plea, a hearing was held on defendant's motion for post-conviction relief. At this hearing, the State made a showing of the evidence available to it:
I also remember Your Honor saying what he has asked for, would it result in a different outcome? The State would contend it would not. Because if there were a[n] evidentiary hearing or a trial the State would be able to point out several times in which he admitted to the charge. For example, in his statement he told law enforcement officers that he had been to visit her that day and while there he saw a man that was there and began arguing and threatening both that man and the victim. When he learned that law enforcement was going to be arriving very shortly he left and hid in the woods. In his own statement he said he watched to see when law enforcement would be leaving; when they had left he came back and came in-not the front door-but the back door. He then proceeded to go into her bedroom where again he had discussions with her. He climbed on top of her and began to stab her.
Your Honor, there would also be an eyewitness account of what happened. Her own, her own daughter was there on this occasion. And she heard her mother screaming. She goes in to check on her and finds the defendant on top of her, holding her down, stabbing her. And she had to hear her mother scream at her, "Kristin, help me," the 15-year-old, not knowing what to do, went for help, went for her grandfather. He then leaves. He doesn't wait for law enforcement to arrive or go out in the front yard. He then proceeds out into the woods and go out into a pasture in a rural area and hide.
When he does get apprehended by law enforcement he admits the murder to Detective Randy Joyce, that is overheard by a Nicholas James Gannon, a next door neighbor. He heard him admit what he had done and said he wanted the officers to shoot him. And he even offered to help them go find the knife that he had used, because he had thrown it or had gotten rid of it out in the pasture.
When he later was interviewed by Sheriff Mike Marshall and by Special Agent Danny Mays of the SBI he again gave the very statement that you have in your file in which he admitted that he had done these crimes.
And whenever law enforcement obtained a search warrant in which to obtain the blood that he is now wanting tested, while the nurse was taking the blood he asked that he wanted to talk to the detective alone. When she stepped out he said to that detective: I know I'm guilty of killing her, but I did not do any burglary, and do not know how you charged me with that-with it. So again, he admitted to killing her.
The State's argument refers to a written statement given to the SBI by defendant, found in the record. In this statement, defendant acknowledges that:
I then stabbed Melissa. I deserve to die. Melissa grabbed me as I was stabbing her. I don't know how many times I stabbed Melissa.
The trial court, in considering the arguments of counsel, ruled from the bench that:
I've also reviewed North Carolina General Statute Section 15A-269, which sets forth the statutory requirements for considering and granting this type of motion. And I conclude that the requests made by the defendant are not material to his defense, and specifically they're not material in that they have not shown a reasonable probability that its disclosure to the defense would result in a different outcome. And otherwise he's failed to show that all the required conditions were met. And therefore, the Motion to Locate and Preserve Evidences as well as the Motion for Post-conviction DNA Testing are denied.
On review of the record, we note first that defendant sought to suppress his confession to law enforcement. However, there is no evidence in the record that the trial court ever ruled on that motion, and it is therefore not properly preserved for appeal. See N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review ... [i]t is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion").
Defendant's motion for DNA testing repeatedly asserted that the evidence sought was material. However, defendant has failed to convince this Court that such evidence, in light of an eyewitness to the murder and defendant's own statement to law enforcement, would have impacted a jury's verdict. Pursuant to our de novo review of this case, we hold that defendant did not show in the trial court, and has not shown on appeal, a "reasonable probability that the verdict would have been more favorable to the defendant[.]" We hold that the trial court did not err in denying defendant's motion for DNA testing.
AFFIRMED.
Report per Rule 30(e).
Judges DAVIS and TYSON concur.

Defendant raises no argument on appeal with respect to his motion to locate and preserve evidence. We therefore deem such appeal abandoned. N.C.R. App. P. 28(b)(6).