IN THE MATTER OF APPEAL OF: IBM CREDIT CORPORATION FROM THE DECISION OF THE DURHAM COUNTY BOARD OF COUNTY COMMISSIONERS CONCERNING THE VALUATION OF BUSINESS PERSONAL PROPERTY FOR TAX YEAR 2001

No. COA11-1144

(Filed 21 August 2012)

**1. Appeal and Error—law of the case—issues not decided**

In a case involving the tax valuation of leased computer equipment, the Tax Commission's determination that findings or conclusions from prior appeals were the law of the case was incorrect. The law of the case applies only to what is actually decided; the prior appeals resulted from the Tax Commission's failure to address evidence concerning the valuation and the Court of Appeals never addressed the underlying issues.

**2. Appeal and Error—mootness—prior remands—misreading**

In a tax valuation action that had been remanded twice previously, valuation issues were not moot where they had to be addressed after the last remand whether or not Schedule U5 was used. Portraying the valuation issues as applicable only as they

---

i. **Additional attorneys of record:** Ann L. Majestic of THARRINGTON SMITH, LLP; Julius L. Chambers of FERGUSON, STEIN, CHAMBERS, WALLAS, ADKINS, GRESHAM, & SUMPTER, P.A.; John Charles Boger of University of North Carolina School of Law center; Victor Goode of NAACP; Mark Dorosin of UNC CENTER FOR CIVIL RIGHTS; Taiyyaba Qureshi of UNC CENTER FOR CIVIL RIGHTS; Brian Darnell Quick of UNC School of Law Center of Civil Rights; Susan Pollitt; Thomas M. Stern; Carlene M. Mcnulty and Matthew Ellinwood of North Carolina Justice Center; Gregory C. Malhoit; Erwin Byrd and Lewis Pitts of Legal Aid of North Carolina; The Honorable Robert F. Orr, Edwin Speas, and John W. O'Hale of POYNER SPRUILL LLP; Jane Wettach of Children's Law Clinic Duke University Law School; John R. Rittelmeyer; Anita S. Earls of SOUTHERN COALITION FOR SOCIAL JUSTICE; Heather Hunt of UNC CENTER ON POVERTY WORK & OPPORTUNITY; Allison B. Schafer and Scott F. Murray of N.C. School Boards Association; Christopher A. Brook.

related to the use of Schedule U5 was a misreading of the prior remand. The County's argument that IBM created the problem ignored the fact that the burden of proof had shifted to the County.

## 3. Taxation—valuation of property—taxpayer values accepted—further remand futile

A Tax Commission decision was reversed and remanded for a decision reducing an assessment to the value listed by the taxpayer where there had been two prior remands and a further remand would be futile. There was no expert testimony as to any valuation approach other than the taxpayer's, which the county rejected; the county did not use an accepted method of valuation and misunderstood its burden of proof; and the Tax Commission twice failed to comply with the Court of Appeals' mandate.

Judge BEASLEY concurs in result only

Appeal by IBM Credit Corporation from a final decision entered 24 June 2011 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 9 February 2012.

*Manning Fulton Skinner, P.A., by Michael T. Medford, for taxpayer-appellant IBM Credit Corporation.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker, for respondent-appellee Durham County.*

STROUD, Judge.

IBM Credit Corporation ("IBM") appeals from a final decision of the Property Tax Commission (the "Tax Commission") regarding the tax valuation of 40,779 pieces of leased computer equipment for business personal property taxes in tax year 2001. Based on this Court's mandates in the prior decisions in *In re Appeal of IBM Credit Corp.*, 186 N.C. App. 223, 650 S.E.2d 828 (2007), *aff'd per curiam*, 362 N.C. 228, 657 S.E.2d 355 (2008) ("IBM I") and *In re Appeal of IBM Credit Corp.*, 201 N.C. App. 343, 689 S.E.2d 487 (2009), *disc. review denied and appeal dismissed*, 363 N.C. 854, 694 S.E.2d 204 (2010) ("IBM II"), which held that the Tax Commission failed to comply with its previous decision, and the unchallenged findings and conclusions of the third final decision by the Tax Commission, we reverse the third final decision and remand to the Tax Commission for entry of a decision

**IN RE IBM CREDIT CORP.**

[222 N.C. App. 418 (2012)]

finding that the property is valued at the value as listed by taxpayer IBM, due to the failure of the County to meet its burden of proof to demonstrate that its valuation is the "true value" of the property.

## I. Procedural Background

This is the third appeal arising from the 2001 tax valuation of IBM's 40,779 pieces of computer and computer-related equipment leased to 364 customers in Durham County. We will not repeat in detail the long procedural history of this case, as we have previously stated this in *IBM I* and *IBM II*. *See IBM I*, 186 N.C. App. at 224-25, 650 S.E.2d at 829-30; *IBM II*, 201 N.C. App. at 343-45, 689 S.E.2d at 488-89. Briefly stated, in the first appeal, this Court vacated the Tax Commission's affirmance of the County's valuation of the property in the amount of $144,277,140, "on the grounds that the Commission's prior order had failed to properly employ the burden of proof required in tax appraisal cases." *See IBM II*, 201 N.C. App. at 345, 689 S.E.2d at 489; *IBM I*, 186 N.C. App. at 228-29, 650 S.E.2d at 831-32. On remand, the Commission, after receiving new briefing from the parties, but no additional evidence, issued a second decision, "which again upheld Durham County's tax appraisal of $144,277,140.00." *IBM II*, 201 N.C. App. at 345, 689 S.E.2d at 489. Once again, IBM appealed, and on the second appeal, we again reversed and remanded to the Tax Commission. *Id.* at 354, 689 S.E.2d at 494. In that opinion, we directed the Tax Commission as to the specific issues to consider and address on remand. *Id.*

In *IBM II*, this Court made two specific holdings:

> [(1)] Although the Commission does not explicitly state what effect, if any, all this evidence[1] has on the legal presumption of correctness, for purposes of this decision we hold that it is " 'competent, material and substantial' evidence" *tending to show* that "the county tax supervisor used an arbitrary method of valuation" which led to "the assessment substantially exceed[ing] the true value in money of the property." [*In re*

---

1. "This evidence," in context, refers to (1) the NACOMEX report; (2) testimony of IBM's valuation expert, Mr. Zises; (3) testimony of Durham County's expert, Mr. Baker, who developed Schedule U5's depreciation tables, as modified after the Tax Commission's decision *In re Appeals of Northern Telecom*, N.C. St. Tax Rep. (CCH) P 201-813 (May 20, 1994) (holding that values obtained using a former version of Schedule U5 were deficient because the assessor "fail[ed] to consider market information about the prices of new and used equipment in the taxpayer's industry."), who testified that the tables "were not based on actual market purchases and sales." *IBM II*, 201 N.C. App. at 347-48, 689 S.E.2d at 490-91.

*Appeal of AMP, Inc.*, 287 N.C. 547, 563, 215 S.E.2d 752, 762 (1975)] (emphasis omitted) (internal quotation marks omitted). Therefore, the burden of persuasion and going forward with evidence that the methods used do in fact produce "true value" shifts to Durham County. [*In re Southern Railway*, 313 N.C. 177, 182, 328 S.E.2d 235, 239 (1985)]; N.C.G.S. § 105–283.

. . . .

[(2)] In appraising IBM Credit's property, Durham County did not meet the statutory standards required of N.C.G.S. § 105–283. In reviewing the methods applied by Durham County, we hold that the county did not make adequate deductions for depreciation by applying Schedule U5 and its transmittal instructions. The failure to make additional depreciation deductions due to *functional and economic obsolescence due to market conditions* results in an appraisal which does not reflect "true value." The decision of the Commission upholding the appraisal is unsupported by substantial evidence based upon a review of all the evidence in the record.

*Id.* at 348, 353-54, 689 S.E.2d at 491, 494 (emphasis in original). Based upon these holdings, we reversed the Tax Commission's second final order, as follows:

Because we are not a fact-finding body, we do not make a finding as to the proper amount of additional depreciation deduction to be applied upon remand. We therefore reverse the Final Decision of the Commission, and again remand to the Commission for a reasoned decision with regard to what amount of depreciation deduction should have been deducted from the valuation to account for *functional and economic obsolescence due to market conditions.*

*Id.* at 354, 689 S.E.2d at 494. In addition to these specific holdings, we noted six specific omissions in the Tax Commission's second final order, which led to "conclusions which lack evidentiary support and are therefore arbitrary and capricious." *Id.* at 349-51, 689 S.E.2d at 491-93. We will discuss some of these specific omissions in detail below, but for now we will address the Tax Commission's misunderstanding of the law of the case as it has developed in *IBM I* and *IBM II.*

## II. Law of the Case

**[1]** First, the third final decision by the Tax Commission, entered on 24 June 2011, and the subject of this appeal, notes that certain points

**IN RE IBM CREDIT CORP.**

[222 N.C. App. 418 (2012)]

have been decided by the prior two decisions of this Court and are thus the "law of the case." Our Supreme Court has described the "law of the case" doctrine as follows:

> [A]s a general rule when an appellate court passes on a question and remands the cause for further proceedings, the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal, provided the same facts and the same questions which were determined in the previous appeal are involved in the second appeal.
>
> However, the doctrine of the law of the case contemplates only such points as are actually presented and necessarily involved in determining the case. The doctrine does not apply to what is said by the reviewing court, or by the writing justice, on points arising outside of the case and not embodied in the determination made by the Court. Such expressions are *obiter dicta* and ordinarily do not become precedents in the sense of settling the law of the case.
>
> In every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but *obiter dicta*.

*Hayes v. City of Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 681-82 (1956) (citations and quotation marks omitted).

The Tax Commission's third final decision noted, correctly, that this Court has previously ruled that "Durham County produced sufficient evidence 'to establish a presumption of correctness' " of its *ad valorem* assessment in *IBM II*; and that "IBM Credit presented evidence 'tending to show' that Durham County used an 'arbitrary method of valuation' " so that "the burden is now shifted to Durham County, the taxing authority, to show 'that the methods used do in fact produce 'true value.' " *See IBM II*, 201 N.C. App. at 347-48, 689 S.E.2d at 489-91. The Tax Commission also correctly noted that this Court reversed the second final order and remanded with the direction to the Tax Commission to make "a reasoned decision with regard to what amount of depreciation deduction should have been deducted from the valuation to account for functional and economic obsolescence due to market conditions." *See id.* at 354, 689 S.E.2d at 494.

The Tax Commission also specifically noted that it was bound by the "law of the case" as to the following findings or conclusions: (1) Its prior findings of fact as to Mr. Zises' NACOMEX Report, as these

findings "have not been set aside on appeal[;]" (2) that Mr. "Zises' report is 'not the appropriate methodology' to assess the subject equipment[;]" (3) that "the NACOMEX Report's lack of credibility and persuasiveness remain the law of the case" and "the NACOMEX Report is based on the market sales method alone and does not use the income method[;]" and (4) that "[t]he North Carolina Court of Appeals has held that Durham County did not meet the statutory standards required by G.S[] § 105-283 in applying Schedule U5 and there is not sufficient evidence in the current record to answer the issues the Court raised about Schedule U5. . . . For these reasons, Schedule U5 and Durham County's application of that Schedule to IBM Credit's equipment will not be relied on or discussed further in this Final Decision." The Tax Commission's determination that the first three findings or conclusions listed above are the "law of the case" is incorrect.

The County argues that the Tax Commission properly found that its prior findings and conclusions as to the NACOMEX report and Mr. Zises' testimony had not been "overturned" by this Court:

> This Court, in *IBM Credit II*, expressly did not set aside the Property Tax Commission's prior finding as to the NACOMEX Report. *See IBM Credit II* at 493 ("The Commission found that the evidence produced by Mr. Zises was flawed with regard to several factors. For purposes of our review, we do not have to determine whether these findings are supported by the evidence or whether the values produced by Mr. Zises' depreciation tables are accurate.") Hence, the Property Tax Commission's findings as to the flaws in the NACOMEX Report were appropriate.

Both the County and the Tax Commission appear to have misconstrued this Court's consideration as to the NACOMEX report and Mr. Zises' testimony. We did not hold in either prior case that this report was lacking in credibility, persuasiveness, or relevance, all of which are noted by the Tax Commission in its findings. Instead, we stated that

> [t]he Commission found that the evidence produced by Mr. Zises was flawed with regard to several factors. These factors include the failure of Mr. Zises to consider use of the computers in the market; design factors inherent in IBM Credit's equipment that impair the equipment's desirability or usefulness in the current market; and criticisms of the use of the subset of data upon which the depreciation tables used by Mr. Zises were obtained. For purposes of our review, *we do not have to determine* whether these findings are supported by the evidence or whether the values produced by Mr. Zises' depreciation tables are accurate.

*IBM II*, 201 N.C. App. at 353, 689 S.E.2d at 494 (emphasis added). We also noted that "[b]ecause we are not a fact-finding body, we do not make a finding as to the proper amount of additional depreciation deduction to be applied upon remand." *Id.* at 354, 689 S.E.2d at 494.

The law of the case applies only to "what is actually decided[.]" *See Hayes*, 243 N.C. at 536, 91 S.E.2d at 682. In *IBM II*, we specifically did *not* decide whether the Tax Commission's findings as to the NACOMEX report and Mr. Zises' testimony "are supported by the evidence or whether the values produced by Mr. Zises' depreciation tables are accurate" as it was not necessary for the issues upon which we reversed the second final decision. *See IBM II*, 201 N.C. App. at 353, 689 S.E.2d at 494. In fact, also in *IBM II*, our first specific holding was that IBM's evidence was "competent, material, and substantial evidence" sufficient to shift the burden of proof and persuasion to the County:

> Although the Commission does not explicitly state what effect, if any, all this evidence[2] has on the legal presumption of correctness, for purposes of this decision we hold that it is " 'competent, material and substantial' evidence" *tending to show* that "the county tax supervisor used an arbitrary method of valuation" which led to "the assessment substantially exceed[ing] the true value in money of the property." *AMP, Inc.*, 287 N.C. at 563, 215 S.E.2d at 762 (emphasis omitted) (internal quotation marks omitted). Therefore, the burden of persuasion and going forward with evidence that the methods used do in fact produce "true value" shifts to Durham County. *Southern Railway*, 313 N.C. at 182, 328 S.E.2d at 239; N.C.G.S. § 105–283.

*IBM II*, 201 N.C. App. at 348, 689 S.E.2d at 491 (emphasis in original). We do not understand how this holding could be construed as a determination that *this Court* upheld the Tax Commission's finding that the NACOMEX report and Mr. Zises' testimony were irrelevant or not credible, as these were the very portions of IBM's evidence which we found shifted the burden of proof to the County, although we could not make findings of fact based upon the evidence, as this is not the role of this Court. If the evidence was "irrelevant," it logically could not have been "competent, material, and substantial" evidence which would shift the burden of proof.

---

2. As noted above, "this evidence" referred back to the NACOMEX report, Mr. Zises' testimony, and other evidence.

**IN RE IBM CREDIT CORP.**

[222 N.C. App. 418 (2012)]

Some of this confusion appears to have arisen based upon the wording of *IBM I* as compared to *IBM II*. In *IBM I*, we held as follows:

> We believe it is necessary to remand this case so that the Commission may apply the proper burden of proof framework. As this Court stated in a similar context:

> Because the [State Personnel] Commission acted under a misapprehension of the law, this case must be remanded. *The rule fixing the burden of proof constitutes a substantial right of the party upon whose adversary the burden rests and must be rigidly enforced.* The law relating to the burden of proof is equally applicable to proceedings which are not conducted before a jury. We cannot say, as a matter of law, that the Commission's finding was not affected by its misapprehension of the law. Therefore, we *vacate the findings and conclusions and remand this case to the Commission for reconsideration of the evidence in additional proceedings in which petitioner has the burden of proof.*

> [*N.C. Dep't of Justice v. Eaker*, 90 N.C. App. 30, 36-37, 367 S.E.2d 392, 397 (emphasis added) (internal citations omitted), *disc. review denied*, 322 N.C. 836, 371 S.E.2d 279 (1988), *overruled on other grounds by Batten v. N.C. Dep't of Corr.*, 326 N.C. 338, 389 S.E.2d 35 (1990).] Here, too, we cannot determine with certainty whether the Commission's misunderstanding of the relevant burdens set forth in *AMP* and *Southern Railway* affected its findings and conclusions.

> Therefore, we remand this case to the Property Tax Commission for reconsideration of the evidence in accord with this opinion. Given our resolution of this appeal, we do not address IBM Credit's remaining arguments.

> Remanded.

186 N.C. App. at 228-29, 650 S.E.2d at 832 (emphasis added). Thus, in *IBM I*, the Tax Commission's first final order was not "reversed," but "vacated" so that on remand the Tax Commission could reconsider the evidence in light of the proper burden of proof. This Court has described the effect of an opinion "vacating" an order as follows:

> The term "vacate" means: "To annul; *to set aside*; to cancel or rescind. To render an act void; as, to vacate . . . a judgment." *Black's Law Dictionary* 1548 (6th ed. 1990). Thus, the vacated portions of the 17 October 1997 order were void and of no effect.

*Friend-Novorska v. Novorska,* 143 N.C. App. 387, 393, 545 S.E.2d 788, 793 (emphasis added), *aff'd per curiam,* 354 N.C. 564, 556 S.E.2d 294 (2001). Despite the fact that *IBM I* specifically vacated "the findings and conclusions [in the first final decision] and remand[ed] this case to the Commission for reconsideration of the evidence in additional proceedings in which petitioner has the burden of proof[,]" 186 N.C. App. at 228, 650 S.E.2d at 832, the Tax Commission found as follows:

> 17. The Commission also found in the Final Decision entered March 30, 2006, that Zises' report is "not the appropriate methodology" to assess the subject equipment. *See* Finding 8 of March 30, 2006 Final Decision. *This finding was not set aside on appeal either.*

(Emphasis added.) This finding is entirely unsupported by the record and clearly erroneous; the "findings and conclusions" of the 30 March 2006 order were *vacated.* To vacate means to "set aside[.]" *See Friend-Novorska,* 143 N.C. App. at 393, 545 S.E.2d at 793.

In *IBM II,* as discussed above, we again remanded the case to the Tax Commission for reconsideration. The final mandate is stated simply as "Reversed and remanded." *See IBM II,* 201 N.C. App. at 354, 689 S.E.2d at 494. The Tax Commission may have construed the fact that *IBM I* used the term "vacate" and that *IBM II* used the word "reverse" as creating some sort of meaningful difference in the portions of its final decision approved or disapproved by this Court. But a full reading of *IBM II* reveals that the entire second final decision by the Tax Commission was reversed. *IBM II* did not approve some portions of the second final decision and disapprove other portions.[3] As a practical matter, the terms "vacate" and "reverse" are synonymous as used in most cases. The term "reverse" is defined as "[t]o overthrow, vacate, *set aside,* make void, annul, repeal, or revoke; as, to reverse a judgment, sentence, or decree, of a lower court by an appellate court, or to change to the contrary or to a former condition." Black's Law Dictionary 1319 (6th ed. 1990) (emphasis added); *See D & W, Inc. v.*

---

3. It has long been recognized that the court may set aside portions of a decision while other portions stand on remand. "When a judgment appealed from consists of distinct and independent matters so that the erroneous portions thereof can be segregated from the parts that are correct, the court will not set aside the entire judgment, but only so much as is erroneous, leaving the residue undisturbed. Thus, where a judgment, entered on several causes of action, is correct as to some of them but erroneous as to others, it may, if the judgment is divisible, be reversed as to the latter, and affirmed as to the former." *Newbury v. Sea Board Air Line Ry.,* 160 N.C. 156, 161, 76 S.E. 238, 240 (1912) (quotation marks omitted).

*City of Charlotte*, 268 N.C. 720, 722, 152 S.E.2d 199, 202 (1966) ("To reverse an injunction is to vacate it.")

Despite the fact that the second final decision was reversed in *IBM II*, the Tax Commission made the following finding of fact:

16. The above findings (Nos. 1-15) as to Zises' NACOMEX Report, other than minor editing, were made in the Final Decision entered by the Commission on August 29, 2008. *See* Findings 1-4, 8, 10, and 14-22 of August 29, 2008 Final Decision. Such findings *have not been set aside* on appeal.

(Emphasis added.)

Again, this finding is also entirely unsupported by the record and clearly erroneous. The entire 29 August 2008 Final Decision was reversed by this Court in *IBM II;* it was "set aside." *IBM II* specifically stated that it did not "determine whether these findings [regarding the NACOMEX Report and Mr. Zises' testimony] are supported by the evidence or whether the values produced by Mr. Zises' depreciation tables are accurate." 201 N.C. App. at 353, 689 S.E.2d at 494.

The third final decision also states that "the Commission has twice ruled that the NACOMEX Report is not credible or reliable, and such rulings *have not been overturned on appeal.*" (emphasis added). Again, this is simply incorrect, as the entire first final decision was vacated, and the entire second final decision was reversed. Both of the prior final decisions were "overturned" or rendered "void" by *IBM I* and *IBM II*, respectively. It is also true, however, that this Court has not previously approved or disapproved the Tax Commission's findings of fact regarding the NACOMEX report and Mr. Zises' testimony, which it has now made three times, *because we have never addressed this issue.*[4] We have not ever reached the point of addressing it

---

4. In *IBM I*, we addressed only the issue of the proper burden of proof, and noted that "[g]iven our resolution of this appeal, we *do not address IBM Credit's remaining arguments.*" 186 N.C. App. at 229, 650 S.E.2d at 832 (emphasis added). Four of these issues which were not addressed were: "9. DID THE PROPERTY TAX COMMISSION ERR BY FINDING AND CONCLUDING THAT THE NACOMEX REPORT IS NOT CREDIBLE BECAUSE MR. ZISES DID NOT AUDIT OR EXAMINE EACH OF THE MORE THAN 40,000 PIECES OF COMPUTER EQUIPMENT THAT COMPRISE THE SUBJECT PROPERTY?

10. DID THE PROPERTY TAX COMMISSION ERR BY FINDING AND CONCLUDING THAT THE NACOMEX REPORT IS NOT CREDIBLE BECAUSE IT IS NOT AN APPRAISAL OF THE SUBJECT PROPERTY BECAUSE IT DOES NOT CONTAIN AN OPINION OF VALUE?

**IN RE IBM CREDIT CORP.**

[222 N.C. App. 418 (2012)]

because the Tax Commission has never addressed it in accordance with our two prior decisions which directed it to do so.

### III.  Issues to be considered as directed by *IBM II*

**[2]** In addition, in *IBM II*, this Court set out six specific issues regarding valuation which the Tax Commission was to address on remand. *See* 201 N.C. App. at 349-51, 689 S.E.2d at 491-93. We discussed each in detail, and the Tax Commission's third final decision does address these issues. We will not address all six issues in detail here, as far more words have already been written about this case than should have been. However, as to issues 4 and 5, the Tax Commission found that "[t]he current record does not contain sufficient information to respond to this issue." The County argues that "since the Commission did not use Schedule U5 to value IBM Credit's computer equipment in the Final Decision, these issues have now become moot." We disagree. Although the County attempts to portray these issues as applicable only as they relate to the use of Schedule U5, which is no longer relevant since Schedule U5 was not used in this decision, this is not an accurate reading of *IBM II*. Whether the Tax Commission determined that Schedule U5 could be used or not, these valuation issues still had to be addressed. For example, we stated:

> Fifth, the Commission does not address why the fact and circumstances of the valuation do not require the appraiser to make adjustments for additional functional or economic obsolescence or for other factors. . . . Where the taxpayer calls to the attention of the appraiser and the Commission facts and circumstances which require special consideration of additional factors, the decision of the county tax appraisers must be evaluated and explained. The rejection of the additional depreciation argument may be justified in some way, but the final decision does not explain why or upon what facts this conclusion would be reached.

---

11. DID THE PROPERTY TAX COMMISSION ERR BY FINDING AND CONCLUDING THAT THE NACOMEX REPORT IS NOT CREDIBLE BECAUSE IT CONTAINED UNVERIFIED DATA AND IGNORED THE CURRENT USE OF THE PROPERTY IN DURHAM COUNTY, NORTH CAROLINA AND/OR THE VALUE OF THE PROPERTY IN PLACE PERFORMING THE FUNCTION OR FUNCTIONS FOR WHICH IT IS REQUIRED TO DO?

12. DID THE PROPERTY TAX COMMISSION ERR BY FINDING AND CONCLUDING THAT THE NACOMEX REPORT IS NOT CREDIBLE BECAUSE MR. ZISES ONLY CONSIDERED THE MODEL NUMBERS WHICH DO NOT TAKE INTO CONSIDERATION THE CONFIGURATION OF THE SUBJECT PROPERTY?"

*Id.* at 350-51, 689 S.E.2d at 492. Granted, the Tax Commission *did* explain its "rejection of the additional depreciation argument" in its third final decision; unfortunately, its explanation was that "the current record does not contain sufficient information to respond to this issue." Where the County has the burden of proof, this is not an appropriate explanation. The County argues that IBM created this problem, contending that

> [t]he reason, however, that the Property Tax Commission did not address these issues is that the existing record does not contain evidence sufficient to respond to them. IBM Credit successfully opposed any additional evidence being taken to respond to such issues. Having chosen to oppose allowing the Commission to respond to these issues, IBM Credit is now estopped from complaining that they were not answered.

This argument entirely ignores the fact that the burden of proof has shifted to the County, as this Court determined in *IBM II*. If there is not sufficient evidence, the fact that the County has the burden of proof means that the County loses. The burden of proof and persuasion is not on IBM.

## IV. Valuation methodology

[3] Since it could not value the property in accordance with the directions as to the six issues as directed by *IBM II*, the Tax Commission adopted a "hybrid" approach to come to its valuation. The Tax Commission noted that it did not have "sufficient information" to respond to this Court's directives in *IBM II* and cobbled together a valuation approach it describes as "[a] combination of the market and income methods[.]" The County argues that the Tax Commission is not required to accept the approach to valuation argued by one side or the other, but

> [t]he Commission may analyze the evidence itself and come to its own conclusions. See *In re Appeal of Westinghouse Elec. Corp.*[,] 93 N.C. App. 710, 716, 379 S.E.2d 37, 40 (1989) ("we believe that the Commission was free to choose a method of calculating depreciation based on its assessment of expert testimony") and holding the Commission could choose a depreciation method proposed by some experts but increase the value of improvements to the property based on testimony of other experts; See also *In re the Appeal of the Blue Ridge Mall,* ____ N.C. App. ____ , 713 S.E.2d. 779, 789 (2011).

**IN RE IBM CREDIT CORP.**

[222 N.C. App. 418 (2012)]

The County is correct, in part, but the cases upon which it relies demonstrate the error in its argument. In both cases, the Tax Commission considered *evidence presented by expert witnesses as to valuation* and ultimately adopted valuation approaches based on the evidence, while not adopting any particular expert's exact methodology. *See Appeal of Westinghouse Elec. Corp.*, 93 N.C. App. 710, 713, 716 379 S.E.2d 37, 38-39, 40 (1989) (noting that "[a]t the hearing of this matter, the Commission heard testimony from six experts in the field of property assessment, three testifying on behalf of the Taxpayer and three for the County. They represented different viewpoints as to which methodology should be employed in appraising Taxpayer's property. . . . We believe that the Commission was free to choose a method of calculating depreciation based on its assessment of expert testimony. It is true that the Commission increased depreciation for economic and functional obsolescence based on testimony of two of Taxpayer's experts who did not use the residual method for calculation. In our view, this fact did not bind the Commission to employ these experts' method of calculation, as it was free to accept as much of their testimony as it found convincing."); *In re Blue Ridge Mall LLC*, ____ N.C. App. ____, ____, 713 S.E.2d 779, 787 (2011)(in affirming the Tax Commission's use of the income approach to valuation using a different capitalization rate rather than the rate proposed by the taxpayer's expert witness, this Court noted that "the Commission's decision demonstrates that, although it adopted Mr. Carter's appraisal method, it made a downward adjustment to the capitalization rate employed by Mr. Carter after recognizing that, in estimating that rate, Mr. Carter had relied most heavily on the sale of a mall which was 50% older than the Blue Ridge Mall and had been sold after the appraisal date of the property here. Because '[t]he capitalized value of a given income stream varies directly with the amount of income and inversely with the capitalization rate,' *see In re Owens*, 132 N.C. App. 281, 287, 511 S.E.2d 319, 323 (1999), the Commission's downward adjustment to the capitalization rate was reasonable. We further note that the capitalization rates from sales of malls 'most comparable' in Mr. Carter's report ranged from 8.94% to 17.34%; thus, the Commission's capitalization rate of 10.5% was within the range of those rates. Although the taxpayer and the County disagree as to the proper capitalization rate to employ, we do not believe that a mere disagreement demonstrates the Commission's rate was unsupported by the evidence or was arbitrary or capricious.") The difference here is that there was no expert testimony as to any valuation approach, other than that presented by IBM, which the Tax Commission

IN RE IBM CREDIT CORP.

[222 N.C. App. 418 (2012)]

rejected. The "hybrid" approach ultimately used was actually not developed by any witness, expert or otherwise.

IBM argues that

> [a]s a substitute for evidence, the County asserted—and the PTC accepted—a new and novel theory that the County failed to raise when the record was being created or at any time prior to the second remand. . . . The County's newly-minted theory, however, seeks to fill the County-created gap in Mr. Lally's testimony by using <u>for the first time</u> a new valuation table and graph created by the County's lawyers on remand, without evidentiary support. . . . <u>Exhibits 1,2,3, and 5 to the Third Final Decision were not admitted into evidence at the evidentiary hearing.</u>

(Emphasis in original.) The County does not respond to this argument, and the record supports it. While we could reject this new valuation approach only on the basis that it was not raised at the hearing before the Tax Commission, as it is well-settled that the "law does not permit parties to swap horses between courts in order to get a better mount[.]" *Weil v. Herring,* 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) (noting that "[a]n examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.") But the County's argument fails for more substantial reasons as well. In reality, all this new "hybrid" approach did was reduce the length of time over which the property was depreciated, from five years to three, based upon testimony of IBM's fact witnesses that the equipment's useful life for leasing purposes is three years. The Tax Commission reasoned that since the property was producing income for three years, "the value of the equipment declines steadily as lease payment are made during the three-year term of the leases. Therefore, the *income approach* mandates a steady rate of decline in value between the sales dates." (emphasis added).

This so-called "income approach" bears no resemblance to the actual income approach to valuation which has previously been recognized by North Carolina's courts. In *In re Owens,* 132 N.C. App. 281, 511 S.E.2d 319 (1999), this Court described the income approach to valuation in the context of an *ad valorem* tax valuation:

> The County contends it complied with the foregoing provisions in employing an income approach to the valuation of the property. We have previously commented "the income approach is the most

reliable method in reaching the market value of investment property." In re *Appeal of Belk-Broome Co.*, 119 N.C. App. 470, 474, 458 S.E.2d 921, 924, *aff'd*, 342 N.C. 890, 467 S.E.2d 242 (1996). "The income approach to value is based on the principle that something is worth what it will earn." *In re Southern Railway*, 313 N.C. 177, 185, 328 S.E.2d 235, 241 (1985).

The capitalized value of a given income stream varies directly with the amount of income and inversely with the capitalization rate . . . and [s]light variations in the capitalization rate can result in large variations in value.

*Id.*

The parties agree that there are two principal income capitalization appraisal methods—direct capitalization and yield capitalization. Indeed, both parties cite and rely upon a textbook produced by the Institute of Appraisers, *The Appraisal of Real Estate*. Although not binding upon this Court, this source summarizes the two methods of capitalization as follows:

Direct capitalization is . . . used to convert an estimate of a single year's income expectancy, or an annual average of several years' income expectancies, into an indication of value in one direct step--either by dividing the income estimate by an appropriate income rate or by multiplying the income estimate by an appropriate factor. . . . The rate or factor selected represents the relationship between income and value observed in the market and is derived through comparable sales analysis.

. . . .

Yield capitalization is . . . used to convert future benefits to present value by discounting each future benefit at an appropriate yield rate or by developing an overall rate that explicitly reflects the investment's income pattern, value change, and yield rate. . . . The method is profit-or yield-oriented, simulating typical investor assumptions with formulas that calculate the present value of expected benefits assuming specified profit or yield requirements.

. . . .

Direct capitalization is simple and easily understood. The capitalization rate or factor is derived directly from the market. . . . Yield capitalization, on the other hand, tends to be complex, requiring the use of special tables, calculators, or computer pro-

grams [and the] formulas and factors [used] can be obtained from financial tables. . . .

According to the testimony of Long, the County utilized a mortgage-equity capitalization approach, a variety of yield capitalization, to value the property. In the absence of evidence of direct comparable sales within Rutherford County, the County determined the capitalization rate by looking to "the marketplace as to what the equity yield [was]. And [the County derived] that information just from lending practices." The only comparable sales information was from areas outside Rutherford County and was "secondary information," and not "highly comparable." Ultimately, the County established the appropriate capitalization rate as being between ten and one-half percent (10.5%) and twelve and three-quarters percent (12.75%), depending upon the age of the warehouse.

*Id.* at 287-88, 511 S.E.2d at 323-24. There is absolutely no evidence, and no findings, as to the actual income, or market income, generated by the property to be valued nor as to any capitalization rate which might be applicable to this situation. The only relevance of the word "income" in the "income approach" as used in the third final decision is that IBM receives income, in some undefined amount, from the leased property for three years. The County has not cited, and we cannot find, any prior cases which have recognized this valuation methodology. This is not an accepted method of valuation and is simply an attempt by the Tax Commission to get around the clear direction of *IBM II*, which specifically stated the factors that it should consider, and that MORE depreciation should be deducted, not less, and "valuation depreciation," not "accounting depreciation", *IBM II*, 201 N.C. App. at 352-53, 689 S.E.2d at 493-94, should be considered in its valuation.[5]

Thus, we are here in 2012, in the ridiculous position of considering a third appeal in the same case, for a tax valuation of property for 2001, where the Tax Commission has twice failed to comply with this Court's mandate. In addition, it has also become clear that based upon the voluminous record and prior opinions of this Court that the following is true:

---

5. Specifically, we held "that the county *did not make adequate deductions* for depreciation in applying Schedule U5 . . . . The failure to make *additional depreciation deductions* . . . does not reflect 'true value.' " *IBM II*, 201 N.C. App. at 353-54, 689 S.E.2d at 494 (emphasis added). We also see no indication that the Tax Commission heeded *IBM II's* directions to distinguish between valuation depreciation and accounting depreciation.

IN RE IBM CREDIT CORP.

[222 N.C. App. 418 (2012)]

1. "[T]he burden of persuasion and going forward with evidence that the methods used do in fact produce 'true value' [has shifted] to Durham County." *See IBM II*, 201 N.C. App. at 348, 689 S.E.2d at 491 (citation omitted).

2. "[T]he county did not make adequate deductions for depreciation by applying Schedule U5 and its transmittal instructions. The failure to make additional depreciation deductions due to functional and economic obsolescence due to market conditions results in an appraisal which does not reflect 'true value.' " *See IBM II*, 201 N.C. App. at 353-54, 689 S.E.2d at 494.

3. "The North Carolina Court of Appeals has held that Durham Count did not meet statutory standards required by G.S. 105-283 in applying Schedule U5 and there is not sufficient evidence in the current record to answer the issues the Court raises about Schedule U5."[6]

4. There is no expert valuation testimony in the record to support the valuation methodology used by the Tax Commission.

Thus, even if we were to remand, yet again, to the Tax Commission with the direction to consider anew, as it should have on the prior two remands, IBM's evidence, including the NACOMEX report and Mr. Zises' testimony, the Tax Commission would be well within its authority to find, yet again, that this evidence is not "reliable" or "credible." These determinations are the province of the Tax Commission. *See IBM II*, 201 N.C. App. at 349, 689 S.E.2d at 491 (stating that " 'it became the Commission's duty to hear the evidence of both sides, to determine its weight and sufficiency and the credibility of witnesses, to draw inferences, and to appraise conflicting and circumstantial evidence, all in order to determine whether the Department met its burden.' " (quoting *Southern Railway*, 313 N.C. at 182, 328 S.E.2d at 239)). If it were to so find, this case would be right back where it is, without "sufficient evidence" in the record to comply with the directives of this Court in *IBM II*. The Tax Commission would then be required to hold that the County has failed to meet its burden of proof and thus IBM would prevail. So even if the Tax Commission *agrees* with the County's arguments and rejects IBM's evidence, IBM still wins. It is an exercise in futility to remand this case again. The County did not meet its burden of proof, which is not surprising, as it misunderstood its burden of proof when this case

---

6. This finding is not challenged on appeal.

**JONES v. S. GEN. INS. CO.**

[222 N.C. App. 435 (2012)]

was first tried in 2006. Accordingly, we reverse the third final decision of the Tax Commission and remand to the Tax Commission for the Tax Commission to enter a decision reducing the assessment of the property to $96,458,707.00, the value as listed by taxpayer IBM.

REVERSED AND REMANDED.

Judge STEPHENS concurs.

Judge BEASLEY concurs in result only.